Opinion for the court filed by Circuit Judge RADER. Concurring opinion filed by Circuit Judge CLEVENGER. Dissenting opinion filed by Circuit Judge DYK.
The United States District Court for the Eastern District of Michigan entered an injunction directing Novo Nordisk A/S and Novo Nordisk, Inc. (collectively, “Novo”) to request the U.S. Food and Drug Administration (“FDA”) to replace Novo’s patent use code U-968 listing for Prandin® in the Orange Book with the former U-546 listing. Because Caraco Pharmaceutical Laboratories, Ltd. (“Caraco”) does not have a statutory basis to assert a counterclaim requesting such injunctive relief, this court reverses and vacates the injunction.
I.
This case arises under the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98-417, 98 Stat. 1585 (1984) (codified at 21 U.S.C. §§ 355, 360cc; 35 U.S.C. §§ 156, 271), as amended by the Medicare Prescription Drug Improvement and Modernization Act of 2003, Pub.L. No. 108-173, 117 Stat.2066 (2003) (collectively, the “Hatch-Waxman Act”). The Hatch-Waxman Act strikes a balance between two potentially competing policy interests — inducing pioneering development of pharmaceutical formulations and methods and facilitating efficient transition to a market with low-cost, generic copies of those pioneering inventions at the close of a patent term. See Andrx Pharms., Inc. v. Biovail Corp., 276 F.3d 1368, 1371 (Fed.Cir.2002).
Title 21 prohibits sale of a new drug without FDA approval. 21 U.S.C. § 355(a). To obtain that approval, a pioneering manufacturer must file a new drug application (“NDA”), containing clinical studies of the drug’s safety and efficacy. 21 U.S.C. § 355(b)(1). As part of the NDA process, the manufacturer must also identify all patents that claim the drug or a method of use:
The applicant shall file with the application the patent number and the expiration date of any patent which claims the drug for which the applicant submitted the application or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in *1361 the manufacture, use, or sale of the drug.
21 U.S.C. § 355(b)(1)(G) (emphases added).
If the patent information described in subsection (b) of this section could not be filed with the submission of an application under subsection (b) of this section ..., the holder of an approved application shall file with the Secretary the patent number and the expiration date of any patent which claims the drug for which the application was submitted or which claims a method of using such drug and with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug.
21 U.S.C. § 355(c)(2) (emphases added).
The FDA has authority to promulgate regulations for the efficient enforcement of these provisions. 21 U.S.C. § 371. Under those regulations, a pioneering manufacturer files with the FDA the patent number and the expiration date of any applicable patents by submitting Form 3542a (“Patent Information Submitted with the Filing of an NDA, Amendment, or Supplement”) or Form 3542 (“Patent Information Submitted Upon and After Approval of an NDA or Supplement”). 21 C.F.R. § 314.53 (2009). If the patent claims one or more methods of using the NDA drug, Forms 3542a and 3542 require a description of each of those processes. Id. This description is commonly known as the “use code narrative.” The FDA assigns a unique number, known as a “use code,” to each description. The FDA publishes a list of drugs, along with the applicable patents and their associated use codes, in its Approved Drug Products With Therapeutic Equivalence Evaluations, commonly known as the “Orange Book.”
A manufacturer that seeks to market a generic copy of these listed drugs may submit an abbreviated new drug application (“ANDA”). 21 U.S.C. § 355(3). The ANDA process streamlines FDA approval by allowing the generic manufacturer to rely on the safety and efficacy studies of a drug already listed in the Orange Book upon a showing of bioequivalence. 21 U.S.C. § 355(j)(2)(A)(iv).
As part of the ANDA process, a generic manufacturer must make a certification addressing each patent identified in the Orange Book pertaining to its drug. 21 U.S.C. § 355(j)(2)(A)(vii). Specifically, the generic manufacturer must select one of four alternatives permitting use of the patented product or process: (I) no such patent information has been submitted to the FDA; (II) the patent has expired; (III) the patent is set to expire on a certain date; or (IV) the patent is invalid or will not be infringed by the manufacture, use, or sale of the generic drug. 21 U.S.C. § 355(3) (2) (A) (vii).
Often pharmaceutical formulations have multiple uses and applications. After expiration of the patent on the composition itself, only some of those uses may enjoy continued protection as patented methods. If a generic manufacturer wishes to seek FDA approval for a use not covered by a method-of-use patent for a listed drug, it must make a “section viii statement.” 21 U.S.C. § 355(j)(2)(A)(viii). Along with the section viii statement, the generic manufacturer must submit a proposed label to the FDA that does not contain the patented method of using the listed drug. When considering approval of these requests for a use not covered by a patent, the FDA relies on the applicable patent’s use code narrative to determine the scope of the patented method. Applications for FDA Approval to Market a New Drug, 68 Fed.Reg. 36676, 36682 (June 18, 2003). The FDA approves the section viii statement only where there is no overlap between the *1362 proposed carve-out label submitted by the generic manufacturer and the use code narrative submitted by the pioneering manufacturer. Id.
The Hatch-Waxman Act facilitates early resolution of disputes between pioneering and generic manufacturers. To achieve this objective, the Act makes a Paragraph IV certification into an act of patent infringement. 35 U.S.C § 271(e)(2). A generic manufacturer that files a Paragraph IV certification must give notice to the patentee and the NDA holder and provide a detailed basis for its belief that the patent is invalid or not infringed. 21 U.S.C. § 355(j)(2)(B)(i). The patentee then has forty-five days to sue the generic manufacturer for infringement. 21 U.S.C. § 355(j)(5)(B)(iii). If the patentee does not sue, the FDA may approve the ANDA. If the patentee sues, the FDA may not approve the ANDA until expiration of the patent, resolution of the suit, or thirty months after the patentee’s receipt of notice, whichever is earlier. 21 U.S.C. § 355(j)(5)(B)(iii). The court entertaining this suit has discretion to order a shorter or longer stay if “either party to the action fail[s] to reasonably cooperate in expediting the action.” Id.
The Hatch-Waxman Act enables a generic manufacturer in a Paragraph IV suit to assert a counterclaim challenging the accuracy of the “patent information” submitted to the FDA:
[The ANDA] applicant may assert a counterclaim seeking an order requiring the holder to correct or delete the patent information submitted by the holder under subsection (b) or (c) of this section on the ground that the patent does not claim either—
(aa) the drug for which the application was approved; or
(bb) an approved method of using the drug.
21 U.S.C. § 355(j)(5)(C)(ii)(I). This counterclaim provision was not part of the original Hatch-Waxman Act. Rather the Medicare Prescription Drug Improvement and Modernization Act of 2003, Pub.L. No. 108-173, 117 Stat.2066 (2003) added this counterclaim provision to permit challenges to patent information at the FDA. The interpretation of this counterclaim provision is the central issue in this case.
II.
Novo markets and distributes the drug repaglinide under the brand name PRANDIN. PRANDIN is an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes (non-insulin dependent diabetes mellitus). The FDA has approved PRANDIN for three uses: (1) repaglinide by itself (i.e., monotherapy); (2) repaglinide in combination with metformin; and (3) repaglinide in combination with thiazolidinediones (“TZDs”). Novo Nordisk, Inc. holds the approved NDA for PRANDIN.
The Orange Book lists two patents for PRANDIN. U.S. Patent No. RE 37,035 (the “'035 patent”) claims, inter alia, the chemical composition of repaglinide. The '035 patent expired on March 14, 2009. U.S. Patent No. 6,677,358 (the “'358 patent”) claims, inter alia, repaglinide in combination with metformin:
A method for treating non-insulin dependent diabetes mellitus (NIDDM) comprising administering to a patient in need of such treatment repaglinide in combination with metformin.
'358 patent, claim 4. The '358 patent expires on June 12, 2018. Novo Nordisk A/S owns the '358 patent. Novo does not own patents claiming the other two approved methods of using repaglinide to treat type 2 diabetes. The FDA initially assigned the '358 patent the use code “U-546 — Use *1363 of repaglinide in combination witli metformin to lower blood glucose.”
On February 9, 2005, Caraco filed an ANDA for the drug repaglinide. The ANDA initially contained a Paragraph III certification for the '035 patent and a Paragraph IV certification for the '358 patent. On June 9, 2005, Novo initiated an infringement action against Caraco. In April 2008, Caraco stipulated that its ANDA would infringe the '358 patent if it included a label that discussed the combination of repaglinide and metformin. At around the same time, Caraco submitted an amended ANDA with a Paragraph IV certification for the '358 patent and a section viii statement declaring that Caraco was not seeking approval for the repaglinide-metformin combination therapy. The FDA indicated that it would approve Cara-co’s proposed carve-out label. Novo moved for reconsideration on the ground that allowing the carve-out would render the drug less safe and effective.
On May 6, 2009, Novo submitted an amended Form 3542 for PRANDIN in which Novo updated its use code narrative for the '358 patent. The FDA removed the use code U-546 from the Orange Book for PRANDIN and substituted the new use code “U-968 — A method for improving glycemic control in adults with type 2 diabetes mellitus.” The FDA then denied Novo’s request for reconsideration as moot in light of the new use code. According to the FDA, the factual predicate on which the FDA’s permissive carve-out determination had rested no longer applied. The FDA then disallowed Caraco’s section viii statement, because its proposed carve-out label overlapped with the use code U-968 for the '358 patent. As a result, Caraco’s current label now includes the repaglinidemetformin combination therapy, which is stipulated to infringe claim 4 of the '358 patent.
On June 11, 2009, Caraco amended its answer and counterclaim. Caraco added a counterclaim under 21 U.S.C. § 355(j)(5)(C)(ii), requesting an order requiring Novo to change the use code for the '358 patent in reference to PRANDIN from U-968 to U-546. Caraco claimed that the use code U-968 was overbroad because it incorrectly suggested that the '358 patent covered all three approved methods of using repaglinide even though it claimed only one approved method. Caraco also added a patent misuse defense, asserting that Novo misrepresented the scope of the '358 patent in its use code narrative.
On June 29, 2009, Novo moved to dismiss Caraco’s new counterclaim and to strike the patent misuse defense. The district court denied Novo’s motions. Caraco then moved for summary judgment on both the new counterclaim and the patent misuse defense. On summary judgment, the district court granted Caraco’s motion on the counterclaim and declined to address the patent misuse defense. The district court found that Novo had improperly filed an overbroad use code narrative for the '358 patent. On September 25, 2009, the district court entered the following injunction:
Novo Nordisk is hereby directed by mandatory injunction under 21 U.S.C. § 355(j)(5)(C)(ii)(l)(bb) to correct within twenty (20) days from the date of this Order and Injunction its inaccurate description of the '358 patent by submitting to FDA an amended Form FDA 3542 that reinstates its former U-546 listing for Prandin and describes claim 4 of the '358 patent in section 4.2b as covering the “use of repaglinide in combination with metformin to lower blood glucose.”
Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd., 656 F.Supp.2d 729, 730 (E.D.Mich.2009).
*1364 Given the urgency of Novo’s situation, Novo filed a motion in this court for an expedited appeal from the district court’s order. This court granted Novo’s motion to expedite briefing. Novo also filed a motion for a stay of the injunction pending appeal and a stay of trial court proceedings. This court ordered a stay of the injunction pending disposition of this appeal but declined to stay trial court proceedings. Because the district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(e), this court has jurisdiction under 28 U.S.C. § 1292(c)(1).
III.
This court reviews the grant of an injunction for an abuse of discretion. Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1301-02 (Fed.Cir.2005). To the extent that an injunction is premised upon an issue of law, such as statutory interpretation, this court reviews that issue without deference. See Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1374 (Fed.Cir.2006).
Statutory construction “begins with ‘the language of the statute.’” Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (quoting Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)). This court derives the plain meaning of the statute from its text and structure. Electrolux Holdings, Inc. v. United States, 491 F.3d 1327, 1330 (Fed.Cir.2007) (citation omitted). If the statutory language is unambiguous, the inquiry ends. Id. Nevertheless, this court may “look at the legislative history ‘only to determine whether a clear intent contrary to the plain meaning exists.’” Sharp v. United States, 580 F.3d 1234, 1238 (Fed.Cir.2009) (quoting Glaxo Operations UK Ltd. v. Quigg, 894 F.2d 392, 396 (Fed.Cir.1990)). To overcome the plain meaning of the statute, the party challenging it must establish that the legislative history provides “an ‘extraordinary showing of contrary intentions.’ ” Id. (quoting Garcia v. United States, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984)).
IV.
The Hatch-Waxman Act provides a limited counterclaim to a generic manufacturer in a Paragraph IV infringement action. The Act authorizes the generic manufacturer to assert a counterclaim “on the ground that the patent does not claim either (aa) the drug for which the application was approved; or (bb) an approved method of using the drug.” 21 U.S.C. § 355(j)(5)(C)(ii)(I) (emphases added).
Novo and Caraco agree that the '358 patent claims only one of the three approved methods of using PRANDIN (i.e., repaglinide in combination with metformin). Novo asserts that the counterclaim is available only if the '358 patent does not claim any approved methods. Caraco argues that it is entitled to the counterclaim because the '358 patent does not claim two of the approved methods of PRANDIN use. In other words, Novo reads “an approved method” in the counterclaim statute as “any approved method” while Cara-co reads it as “all approved methods.”
This court detects no ambiguity in the statutory language. When an indefinite article is preceded and qualified by a negative, standard grammar generally provides that “a” means “any.” See, e.g., American Heritage Dictionary of the English Language 1 (4th ed.2006) (defining “a” as “[a]ny” in the example “not a drop to drink”); Random House Webster’s Unabridged Dictionary 1 (2d ed.2001) (defining the indefinite article “a” as “any” or “a single” in the example “not a one”); see also Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (adopting a construction that is “quite sen *1365 sible as a matter of grammar”) (citation omitted).
The rest of the counterclaim provision also does not. support Caraco’s interpretation. In the context of this case, the statutory language “an approved method of using the drug” refers to the approved methods of using the listed drug, PRANDIN. This language cannot refer to the methods of using Caraco’s generic drug, because the FDA has not yet approved Caraco’s ANDA. Therefore, the HatchWaxman Act authorizes a counterclaim only if the listed patent does not claim any approved methods of using the listed drug.
Although the statutory language on its face presents no ambiguities, this court nonetheless examines the legislative history to make sure that it does not contain any clear intent to the contrary. Before the amendment to the Hatch-Waxman Act in 2003, private litigants could not challenge FDA submissions at all. Buckman Co. v. Plaintiffs’ Legal Comm., 531 U.S. 341, 349, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). Novo and Caraeo agree that the counterclaim provision responded to this court’s decision in Mylan Pharms., Inc. v. Thompson, 268 F.3d 1323 (Fed.Cir.2002). In Mylan, the Orange Book listed a patent as covering the FDA-approved drug BuS-par. Id. at 1330-31. Mylan, a generic manufacturer, asserted that the patent “did not claim BuSpar or an approved method of using BuSpar.” Id. at 1331. This court held that Mylan did not have a private cause of action to delist the allegedly irrelevant patent from the Orange Book. Id. The 2003 amendment used exact language from Mylan in the new counterclaim provision. This choice of legislative language suggests that the 2003 Amendment sought to correct the specific issue raised in Mylan, i.e., to deter pioneering manufacturers from listing patents that were not related at all to the patented product or method. Thus, the language selected for this Amendment supports this court’s interpretation that “an approved method” means “any approved method.” A patent listing that covers one amongst several approved methods of using a formulation protects that patented method and thus bears a direct relation to the purpose of Orange Book listings. This court does not detect a situation such as the one occurred in Mylan.
This casé also suggests that this court should address the relationship between section viii and the counterclaim provision. Section viii addresses scenarios where a patent claims at least one, but not all, approved methods of using a drug. See 21 U.S.C. § 355(j)(2)(A)(viii). This court recognizes that a broad use code covering all uses of a pharmaceutical could require generic manufacturers to prove specifically that their use will not overlap with and infringe the patented use. This proof, under Hatch-Waxman procedures, will take the form of a Paragraph IV lawsuit. In that context, the generic may provide proof that their use will not cause infringement of the patented use. This court perceives that the Hatch-Waxman Act will thus ensure that a generic drug for non-patented purposes will not be used for patented purposes via a simple section viii certification. Instead, the generic manufacturer will need to alleviate the risk of infringement or induced infringement in a proceeding that fully tests for infringement and its implications, including potential health and safety risks. Thus, the Act again facilitates efficient resolution of disputes concerning potential overlapping of protected and unprotected uses. The Act seeks to strike a balance of the pioneering and generic manufacturers’ interests.
As Judge Clevenger points out, Caraco’s real complaint should lie with the FDA, not with Novo. Had it not been for the FDA’s regulatory action, Caraeo could have asserted in a Paragraph IV lawsuit *1366 that its proposed labeling did not infringe the '358 patent. It was the FDA, not Novo, that tipped the careful balance in the favor of pioneering manufacturers.
V.
As further indication of balancing interests and creation of an efficient dispute resolution mechanism, this court notes that the Act, by its terms, does not allow generic manufacturers to counterclaim unless the. listed patent bears no relation to the listed drug. To be more specific, the terms of the counterclaim provision do not authorize an order compelling the patent holder to change its use code narrative. The counterclaim provision states that a generic manufacturer can request an order compelling “the holder to correct or delete the patent information submitted by the holder under subsection (b) or (c).” 21 U.S.C. § 355(j)(5)(Q(ii)(D (emphasis added). Subsection (b) requires a pioneering manufacturer to submit “the patent number and the expiration date of any patent ... which claims a method of using such drug.” 21 U.S.C. § 355(b)(1) (emphases added). Subsection (c) states that “[i]f the patent information described in subsection (b) of this section could not be filed with the submission of an application,” the holder “shall file with the Secretary the patent number and the expiration date of any patent ... which claims a method of using such drug.” 21 U.S.C. § 355(c)(2) (emphases added).
Thus, the Act defined the term “patent information” as “the patent number and the expiration date.” See Valley Drug Co. v. Geneva Pharms. Inc., 344 F.3d 1294, 1296-97 (11th Cir.2003) (referring to the patent number and the expiration date as “this patent information”). The reference in subsection (c) to “the patent information described in subsection (b)” could only mean the patent number and the expiration date, because no other “patent information” appears in the statute. Therefore, to maintain consistency in the statutory terms, “the patent information” in the counterclaim provision must also mean the patent number and the expiration date. Envtl. Def. v. Duke Energy Corp., 549 U.S. 561, 574, 127 S.Ct. 1423, 167 L.Ed.2d 295 (2007) (noting that the identical words used in the same act are presumed to have the same meaning). Thus, the counterclaim provision only authorizes suits to correct or delete an erroneous patent number or expiration date. The authorization does not extend to the use code narrative. Once again, this careful use of language suggests that the Act facilitates efficient resolution of disputes over the potential overlap of patented and unpatented uses in the form of a Paragraph IV suit.
Approximately six months before the 2003 Amendment, the FDA promulgated a regulation concerning the “Submission of Patent Information” in which it requires a pioneering manufacturer to submit not only the patent number and the expiration date, but also the use code narratives and other patent-related information on Forms 3542a and 3542. See 21 C.F.R. § 314.53. This regulation appeared to include the use code narrative under the broader heading of “patent information.” Although this regulation preceded the 2003 Amendment, it did not change the meaning of the statutory use of the term “patent information.” As this court has clarified, “[s]uch opaque timing observations hardly amount to a ‘most extraordinary showing of contrary intentions,’ especially when the language of the statute trumpets its meaning by itself.” Wyeth v. Kappos, 591 F.3d 1364, 1372 (Fed.Cir.2010). The counterclaim provision does not mention the FDA regulations or in any way suggest adoption of a meaning for “patent information” broader than the express statutory definition. Moreover, this court owes “no deference is due to agency interpretations at odds with the plain language of the statute *1367 itself.” Pub. Employees Ret. Sys. v. Betts, 492 U.S. 158, 171, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). As discussed above, this broader definition would upset the careful balance that requires a full resolution of the potential infringement issues involved in overlapping patented and unpatented uses.
The legislative history does not add any clarity to the meaning of “patent information.” During the floor debate, Senators occasionally referred to the need to correct “patent information.” See, e.g., 149 Cong. Rec. S15746 (daily ed. Nov. 24, 2003) (statement of Sen. Schumer) (The counterclaim provision may “delist the patent or correct the patent information in FDA’s Orange Book.”). This court must read these statements to use the term “patent information” consistent with the express statutory definition. Accordingly, to preserve the Act’s careful balance and to enforce the language of the statute, the explicit definition of “the patent information” as “the patent number and the expiration date” controls.
VI.
Caraeo argues that in case this court does not find that Caraeo is entitled to a counterclaim, this court should affirm the district court’s injunction under the doctrine of patent misuse. Because the judicial doctrine of patent misuse creates an unusual circumstance where an infringer can escape the consequences of its infringing conduct because the victim of that tort may have used its patent rights to gain an unfair competitive advantage against an unrelated third party, this court examines such allegations with particularity. See, e.g., C.R. Bard v. M3 Sys., 157 F.3d 1340, 1372-73 (Fed.Cir.1998) (“Although the law should not condone wrongful commercial activity, the body of misuse law and precedent need not be enlarged into an open-ended pitfall for patent-supported commerce.”). For instance, the doctrine may apply where the patentee’s misconduct toward unrelated parties amounted to unfair market benefits beyond the scope of the patent. See Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 704 (Fed.Cir.1992). In any event, in this case, the district court, apparently recognizing the rarity of this situation, expressly declined to address the doctrine of patent misuse. Without any finding to review, this court declines to adjudicate this issue in the first instance. See Ecolab, Inc. v. FMC Corp., 569 F.3d 1335, 1352 (Fed.Cir.2009).
VII.
This court therefore reverses the district court’s grant of summary judgment on Caraco’s attempted, but unsuccessful, counterclaim and vacates the injunction ordering Novo to correct its use code for the '358 patent listed in the Orange Book for PRANDIN.
REVERSED and VACATED.