# United States Court of Appeals for the Federal Circuit

2006-5106


ELECTROLUX HOLDINGS, INC. and
ELECTROLUX HOME PRODUCTS, INC.,

Plaintiffs-Appellants,


v.


UNITED STATES,

Defendant-Appellee.


Steven A. Friedman, Squire, Sanders & Dempsey L.L.P., of Cleveland, Ohio, argued for plaintiffs-appellants. With him on the brief was Terrence G. Perris.

Richard Farber, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Eileen J. O'Conner, Assistant Attorney General, and Bethany B. Hauser, Attorney.

Appealed from: United States Court of Federal Claims

Judge Susan G. Braden

# United States Court of Appeals for the Federal Circuit

2006-5106

ELECTROLUX HOLDINGS, INC. and
ELECTROLUX HOME PRODUCTS, INC.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  June 20, 2007

_____

Before BRYSON, <u>Circuit Judge</u>, PLAGER, <u>Senior Circuit Judge</u>, and GAJARSA, <u>Circuit Judge</u>.

PLAGER, <u>Senior Circuit Judge</u>.

This is a taxing case.  The general three-year statute of limitations for filing a federal tax refund claim is found in 26 U.S.C. § 6511(a).  Subsection (d)(2)(A) of § 6511 establishes an exception to the general statute when the claim relates to an overpayment attributable to a capital loss carryback.  This case involves the construction and application of this exception and presents an issue of first impression for this court.

The case arises out of a refund claim for the 1995 tax year submitted by White Consolidated Industries, Inc. ("WCI"), the predecessor-in-interest of Electrolux Holdings, Inc. and its wholly-owned subsidiary Electrolux Home Products, Inc. (collectively

"Electrolux").  The Commissioner of Internal Revenue disallowed the claim on the ground that the normal three-year statute of limitations for claiming a refund had expired.  Electrolux then filed a complaint in the United States Court of Federal Claims for a tax refund.

Electrolux contends that its 1995 refund claim was timely in accordance with the special limitations period in 26 U.S.C. § 6511(d)(2)(A).  The trial court concluded that the special period of limitations does not apply to Electrolux's 1995 refund claim and dismissed the complaint for failure to comply with the jurisdictional prerequisite of filing a timely refund claim.  Because we agree that under the correct interpretation of § 6511(d)(2)(A) the special limitations period does not apply to the 1995 claim, we affirm the judgment of the trial court.

## BACKGROUND

The facts in this case are undisputed.  During 1994, WCI realized a long-term capital loss of $53,821,916 due to the sale of its entire investment in Blaw Knox Construction Equipment Corporation.  On its 1994 consolidated federal income tax return, WCI deducted only a part of the loss—about $8,500,000—because it concluded the full amount was not deductible under the loss-disallowance rule in effect at the time, Treas. Reg. § 1.1502-20 (1994).  The 1994 return was later audited, and the Commissioner and Electrolux entered into an agreement, pursuant to 26 U.S.C. § 6501(c)(4), to extend to December 31, 1999, the period during which the Commissioner could assess additional tax for 1994.  As a result, the period for filing a tax refund claim for the 1994 tax year was extended to June 30, 2000, six months after the end of the assessment period.  See 26 U.S.C. § 6511(c)(1).

Electrolux later concluded that the loss-disallowance rule was invalid, so that it was not required to limit its deduction of the Blaw Knox long-term capital loss. Electrolux thus believed it was entitled to deduct an additional long-term capital loss of about $45 million. Because Electrolux had no additional long-term capital gains for 1994 to offset any additional deduction, it did not file a refund claim for 1994. However, pursuant to 26 U.S.C. § 1212(a)(1), Electrolux was permitted to carry back[1] the unused portion of the long-term capital loss to each of the preceding three years, starting with the earliest (i.e., 1991), and then carry over[2] any remaining unused long-term capital loss to each of the succeeding five years, treating the loss as a short-term capital loss in each tax year.[3]

---

[1] A "carryback" is an "income-tax deduction (esp. for a net operating loss) that cannot be taken entirely in a given period but may be taken in an earlier period (usu. the previous three years)." Black's Law Dictionary 227 (8th ed. 2004).

[2] A "carryover" (or "carryforward") is an "income-tax deduction (esp. for a net operating loss) that cannot be taken entirely in a given period but may be taken in a later period (usu. the next five years)." Id.

[3] The relevant text of § 1212(a)(1) states:

> If a corporation has a net capital loss for any taxable year (hereinafter . . . "loss year"), the amount thereof shall be—
> > (A) a capital loss carryback to each of the 3 taxable years preceding the loss year, [and]
> > (B) . . . a capital loss carryover to each of the 5 taxable years succeeding the loss year;
> > . . . .
> and shall be treated as a short-term capital loss in each such taxable year. The entire amount of the net capital loss for any taxable year shall be carried to the earliest of the taxable years to which such loss may be carried, and the portion of such loss which shall be carried to each of the other taxable years to which such loss may be carried shall be the excess, if any, of such loss over the total of the capital gain net income for each of the prior taxable years to which such loss may be carried.

26 U.S.C. § 1212(a)(1).

Because Electrolux had no additional capital gains in 1991 and 1992 against which the excess long-term capital loss could be offset, it sought to carry back the loss to 1993. For that year Electrolux was able to deduct about $27 million, the amount of capital gain that was available to absorb the loss. On December 31, 1999, Electrolux filed an amended return seeking a refund of about $4.5 million for the 1993 tax year due to the tax effect of deducting a portion of the 1994 long-term capital loss.

Electrolux carried forward the remaining amount of the 1994 loss in succession to tax years 1995, 1996, 1997, and 1998. On December 31, 1999, Electrolux filed an amended return seeking a refund of about $1.5 million for the 1995 tax year as a result of an additional deduction of about $8.4 million, the portion of the unused 1994 capital loss that could be absorbed by additional capital gains in 1995. Electrolux also filed refund claims for 1996, 1997, and 1998, using up the remaining portion of the 1994 long-term capital loss.

In 2001, we held that the loss-disallowance rule in Treas. Reg. § 1.1502-20 (1994) was indeed invalid. Rite-Aid Corp. v. United States, 255 F.3d 1357 (Fed. Cir. 2001). In view of that decision, the Commissioner agreed that Electrolux was permitted to deduct the full amount of the Blaw Knox loss for the 1994 tax year. He granted substantially all of the refunds claimed by Electrolux for tax years 1993, 1996, 1997, and 1998 that resulted from carrying the unused portion of the 1994 loss to those years. However, he disallowed the refund claim for 1995 on the ground that the statute of limitations had expired.

When the amended returns were filed, the general three-year statute of limitations for filing a refund claim had expired for tax years 1993 and 1995 but had not

yet run for tax years 1996, 1997, and 1998. See 26 U.S.C. § 6511(a) (providing that a claim for refund shall be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever is later). The Government does not dispute that the special limitations period provided by 26 U.S.C. § 6511(d)(2)(A) applies to Electrolux's refund claim for taxable year 1993 because the claim "relates to an overpayment attributable to . . . a capital loss carryback," i.e., the carryback of the 1994 capital loss to 1993. Under that provision,

> [i]f the claim for . . . refund relates to an overpayment *attributable to* . . . a capital loss *carryback*, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be that period which ends 3 years after the time prescribed by law for filing the return . . . for the taxable year of the . . . net capital loss which results in such carryback, or the period prescribed in subsection (c) in respect of such taxable year, whichever expires later.

Id. (emphases added). The period for filing a refund claim for the 1994 tax year had been extended to June 30, 2000, in accordance with § 6511(c) as a result of the agreement between the Commissioner and Electrolux to extend the assessment period. Since the refund claim for 1993 related to an overpayment in 1993 that was attributable to the carryback of the 1994 capital loss, the period for filing the 1993 claim ended at the same time as the period for filing a 1994 refund claim, i.e., June 30, 2000. Therefore, the December 31, 1999, filing of the refund claim for the 1993 tax year was timely.

After the Commissioner disallowed the refund claim for the 1995 tax year, Electrolux filed suit in the Court of Federal Claims seeking a refund of $1,453,848 for that year. Electrolux alleged in its complaint that the special limitations period of § 6511(d)(2)(A) applied to the 1995 tax year as well as the 1993 tax year. Following

briefing and oral argument, the trial court rendered a decision in which it agreed with the Government that § 6511(d)(2)(A) does not apply to the refund claim that was based on the carryover to 1995 of the 1994 capital loss, and therefore the 1995 refund claim was not timely filed. Electrolux Holdings, Inc. v. United States, 71 Fed. Cl. 748 (2006). Accordingly, the trial court granted the Government's motion to dismiss the complaint on the ground that Electrolux had not filed a timely refund claim.

Electrolux filed a timely appeal with this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

The question presented in this appeal is whether the time for filing Electrolux's refund claim for the 1995 tax year is governed by 26 U.S.C. § 6511(d)(2)(A), the special exception to the general three-year statute of limitations set forth in 26 U.S.C. § 6511(a). The special provision is available only if the overpayment in 1995 was "attributable to . . . a carryback" of a net capital loss from 1994. Whether the special limitations period applies to Electrolux's 1995 claim is an issue of statutory interpretation, which we review without deference to the trial court. Strickland v. United States, 423 F.3d 1335, 1337 (Fed. Cir. 2005).

Statutory interpretation begins with the language of the statute. VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1579 (Fed. Cir. 1990). We derive the plain meaning of the statute from its text and structure. Norfolk Dredging Co. v. United States, 375 F.3d 1106, 1110 (Fed. Cir. 2004) (citing Alexander v. Sandoval, 532 U.S. 275, 288 (2001)). If the language of the statute is clear and its meaning unambiguous, that is the end of our inquiry. VE Holding, 917 F.2d at 1580. The plain

meaning is conclusive, and it is erroneous to explore the legislative history in pursuit of alternative meanings. Id. at 1579-80; Norfolk Dredging, 375 F.3d at 1110.

The relevant statutory language in this case is "attributable to . . . a capital loss carryback." The phrase "attributable to," though it appears in many provisions of the Internal Revenue Code, is not defined anywhere in the Code and has no special technical meaning under the tax laws. Stanford v. Comm'r, 152 F.3d 450, 458 (5th Cir. 1998) (citing Lawinger v. Comm'r, 103 T.C. 428, 435 (1994)). Courts in various tax cases have construed the phrase according to its plain meaning, which is understood to be "due to, caused by, or generated by." Id. at 459; Lawinger, 103 T.C. at 435 (collecting cases); see also Braunstein v. Comm'r, 374 U.S. 65, 70 (1963) (interpreting "attributable to" in the phrase "gain attributable to such property" as "merely confin[ing] consideration to that gain caused or generated by the property in question"). The parties provide no reason why the phrase "attributable to" should have a different meaning when used in § 6511(d)(2)(A), the special statute of limitations at issue here.

As the trial court correctly observed, when the plain meaning of "attributable to" is applied to § 6511(d)(2)(A) in the context of this case, the special limitations period is available for the 1995 tax year only if the 1995 overpayment was "due to, caused by, or generated by" a *carryback* of the 1994 long-term capital loss. Under the carryback/carryover mechanism set forth in 26 U.S.C. § 1212(a), the direct cause of the 1995 overpayment, which led to Electrolux's refund claim for 1995, was the capital loss *carryover* to that year. The original source of the carryover was the 1994 long-term capital loss; if there had been no net capital loss for 1994, there would have been no capital loss carryover to 1995, and thus no overpayment in 1995.

Electrolux agrees that the capital loss carryover to 1995 was one cause of the 1995 overpayment but argues that there was an additional cause—the carryback to 1993 of the 1994 capital loss. Electrolux's theory is that the 1995 overpayment was "caused or generated by" the carryback to 1993 because it can be "traced to" the 1993 carryback. In Electrolux's view, there was a chain of causation leading from the 1994 capital loss (the original source) to the 1995 overpayment (the end result), and the 1993 carryback was a necessary and substantial link in that chain. Because § 1212(a) requires a taxpayer to carry back a capital loss to the preceding three years before carrying any remaining amount forward, Electrolux contends that both the existence and the amount of the 1995 carryover could only have been determined by reference to the earlier carrybacks.

Electrolux bases its "tracing" argument on two cases, one from the Seventh Circuit and the other an unpublished district court opinion. In First Chicago Corp. v. Commissioner, 742 F.2d 1102 (7th Cir. 1984), the taxpayer carried back a capital loss and an investment credit from 1974 to the 1971 tax year, causing a reduction in its 1971 income tax. The Commissioner later discovered a deficiency for the 1972 tax year because the taxpayer failed to adjust the minimum tax carryover for 1972 to account for the 1971 tax decrease. After the Commissioner issued a notice of deficiency for 1972, the taxpayer filed an action in the United States Tax Court, asserting that the statute of limitations for assessing a deficiency had expired.

The Commissioner argued that the 1972 tax year was still open under 26 U.S.C. § 6501(h) and (j), a special statute of limitations then in effect. According to those provisions, the period for assessing a deficiency "attributable to" a capital loss carryback

or investment credit carryback was the same as the period within which a deficiency for the year of the capital loss or investment credit could be imposed. Because the period for assessing a deficiency in 1974 had not expired, the Commissioner could still assess a deficiency for the 1972 tax year if it was "attributable to" the carrybacks from 1974.

The Tax Court held that the 1972 deficiency was not attributable to the carrybacks from 1974 to 1971 and there was no basis for construing the statute to include carryovers as well as carrybacks. First Chicago Corp. v. Comm'r, 80 T.C. 648, 652-55 (1983). Judge Whitaker dissented, explaining that the 1972 deficiency was "attributable to" the carrybacks from 1974 because it could be "traced directly to" the carrybacks. Id. at 665 (Whitaker, J., dissenting). On appeal, the Seventh Circuit reversed the Tax Court majority, adopting Judge Whitaker's dissenting opinion as its own. First Chicago, 742 F.2d at 1103.

The other case relied on by Electrolux is Marshalltown Savings & Loan Ass'n v. United States, No. 4-91-CV-10003, 1991 WL 331376 (S.D. Iowa Dec. 31, 1991). In that case, the taxpayer carried back to 1979 certain net operating losses incurred in 1985. The reduction in the 1979 tax liability made possible a carryover of investment tax credits from 1979 to 1980, which in turn resulted in an overpayment of taxes in 1980. When the taxpayer filed its refund claim, the normal limitations period under 26 U.S.C. § 6511(a) had already expired for the 1979 and 1980 tax years. The district court held that the special limitations period of § 6511(d)(2)(A) applied to the taxpayer's refund claim for 1980 as well as its 1979 claim, and therefore both were timely since they were filed well within the period set forth in that subsection.

We of course are not bound by First Chicago and Marshalltown, and in any event the cases are distinguishable from the case before us. In each of those cases, the deficiency or overpayment was directly caused by the carryback when the carryback triggered a second tax mechanism, different from the one that initially created the carryback. In First Chicago, the capital loss and investment credit carrybacks resulted in a reduction in the taxpayer's 1971 income tax. This in turn produced a second tax effect—the 1972 deficiency caused by the taxpayer's failure to adjust the minimum tax carryover. Similarly, in Marshalltown, the net operating loss carryback to 1979 caused a reduction in tax liability for that year. This allowed the taxpayer to take advantage of another tax mechanism—the carryover of investment tax credits to 1980, which resulted in an overpayment of taxes for that year.

In contrast, the carryback of Electrolux's 1994 capital loss to 1993 did not trigger a different tax mechanism. Rather, the carryback to 1993 and the carryover to 1995 were both part of the same tax mechanism provided in 26 U.S.C. § 1212(a)(1), which allows the taxpayer to carry a net capital loss for a given year to both preceding and succeeding years. It is true that Electrolux carried back its 1994 capital loss to 1993 before it carried the remaining loss forward to 1995—that is what the statute requires. But it was the loss in 1994, not the carryback to 1993, that led to the carryover to 1995, and thus the 1995 overpayment. In First Chicago and Marshalltown, if there had been no carryback to the earlier year there would have been no deficiency or overpayment in the subsequent year. The same cannot be said in the instant case; there is no comparable direct cause and effect relationship between Electrolux's 1993 carryback and its 1995 overpayment.

Electrolux argues that the amount of the 1995 overpayment could not have been determined until the 1994 capital loss had been carried back to 1993 and the amount to be carried over to 1995 had been computed as the excess of the loss over the capital gains for 1993. For purposes of § 6511(d)(2)(A), however, it is immaterial that the amount of the overpayment in the 1995 tax year was affected by the process of carrying back the 1994 capital loss before carrying it forward. Under the statute, it is the fact of the overpayment, not the amount, that must be attributable to the carryback.

Electrolux further argues that that requirement is satisfied here because the existence of the 1995 overpayment depended on the 1993 carryback. We agree that Electrolux could not have determined that there was a 1995 carryover, and thus a 1995 overpayment, until after it had carried back the 1994 capital loss to 1993. But it does not follow that the 1993 carryback caused or generated the 1995 overpayment. Indeed, the carryback to 1993 could only have had the effect of reducing or even precluding an overpayment in 1995 rather than the effect of causing it.

Both Electrolux and the Government make policy arguments in support of their positions. Electrolux argues that with the increasing complexity of the corporate tax audit process, it is not unusual to face the circumstance in which the Government chooses to intensively audit one year—and thus grants an extension of the statute of limitations for that year—and chooses not to audit a later year. This can result in the normal statute of limitations running for the later year before it runs for the earlier year, which is what happened in this case. That pattern can lead to a tax attribute carryback and carryover from the audited year that can require consequential adjustments in the subsequent but closed year. Since such adjustments may favor the taxpayer in some

cases and the Government in others, the interpretation put on the statute by the trial court (and here adopted by us) creates a trap for either the taxpayer or the Government depending on the circumstances. This, argues Electrolux, is unfair to one or the other, and unnecessarily complicates the tax controversy process. The "tracing" theory advocated by Electrolux would avoid this by applying the special statute provision to both carrybacks and carryovers.

The Government, on the other hand, argued before the trial court that if the special statute of limitations were held to be applicable to carryover years, taxpayers would be harmed in most circumstances. Since the carryover year is after the loss year, the special statute based on the loss year could end, in the absence of extensions, before the general limitations period. Electrolux disputes this reading of the law based on published Internal Revenue Service materials.

Whatever may be the merits of these arguments, they cannot carry weight in the face of a statutory provision that is clear on its face. The statute addresses only overpayments attributable to a carryback. If there are problems with how that provision functions in the real world of tax accounting, that is a problem that must be addressed by Congress.

In sum, Electrolux's 1995 overpayment was not "due to, caused by, or generated by" the carryback of the 1994 capital loss to 1993 and thus was not "attributable to" a capital loss carryback. Therefore, the special limitations period contained in 26 U.S.C. § 6511(d)(2)(A) does not apply to Electrolux's 1995 tax year. Accordingly, Electrolux's tax refund claim for 1995 was untimely, and the trial court properly dismissed the complaint. See 26 U.S.C. § 7422(a).

## CONCLUSION

The judgment of the Court of Federal Claims is

AFFIRMED.