**Raleigh W. HALL & Margaret E. Hall, Pro se, Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**No. 10–284T.**

United States Court of Federal Claims.

Aug. 9, 2011.

---

Raleigh W. Hall and Margaret E. Hall, pro se, Jamaica, New York.

David Raymond House, Department of Justice, Tax Division, Washington, D.C., with whom was Principal Deputy Assistant Attorney General John DiCicco, for Defendant. Steven I. Frahm, Chief, Court of Federal Claims Section.

### OPINION AND ORDER

FUTEY, Judge.

Before the Court is a dispute over whether a taxpayer must follow the precise rules of the Internal Revenue Code when deducting net operating losses ("NOLs"), which are generally defined as the excess of deductions over gross income. I.R.C. § 172(c). Plaintiffs, Raleigh W. and Margaret E. Hall, who are appearing *pro se*, suffered a number of net operating losses between 1988 and 2002, but also reported taxable income during some of those years. Under Section 172 of the tax code, taxpayers can deduct net operating losses they have suffered in a given taxable year from other taxable years, if certain requirements are met. The government contends that plaintiffs fail to meet these requirements, and plaintiffs argue that the requirements themselves are discriminatory.

Defendant filed a Motion For Summary Judgment on May 20, 2011. Plaintiffs filed a Motion For Denial Of Summary Judgment in response to defendant's motion on June 30, 2011. Defendant filed a Reply To Plaintiffs' Motion For Denial Of Defendant's Motion For Summary Judgment on July 15, 2011.

### I. *Background*

The parties have filed a joint stipulation as to the facts relevant to summary judgment on liability. Plaintiffs are the sole shareholders of R.W. Hall General Contractors, Inc., which is incorporated in New York and recognized as an S Corporation under I.R.C. § 1362(a). As individual taxpayers, plaintiffs suffered losses for the taxable years 1988, 1989, 1990, 1991, 1996, and 2001, while they reported taxable income in 1992, 1993, 1995, 1997, 1998, 2000, and 2003. In April 2007, plaintiffs filed amended tax returns for 1988, 1989, 1990, 1991, 1993, 1996, and 2001. Their income and losses as reported were:

| Taxable Year | Taxable Income as Originally Claimed | Net Operating Losses as Originally Claimed | Net Operating Losses as Amended in 2007 |
|---|---|---|---|
| 1988 | $0 | $244,580 | $242, 657 |
| 1989 | $0 | $204,975 | $211,925 |
| 1990 | $0 | $ 70,909 | $ 77,648 |
| 1991 | $0 | $ 36,275 | $ 43,055 |
| 1992 | $ 419,267 | $0 | no amendment |
| 1993 | $ 8,013 | $0 | $ 5,495 |
| 1994 | $0 | $0 | no amendment |
| 1995 | $ 745,078 | $0 | no amendment |
| 1996 | $0 | $ 85,991 | $ 16,566 |
| 1997 | $1,116,759 | $0 | no amendment |
| 1998 | $ 71,736 | $0 | no amendment |
| 1999 | $0 | $0 | no amendment |
| 2000 | $ 826,679 | $0 | no amendment |
| 2001 | $0 | $ 79,276 | $123,998 |
| 2002 | $0 | $0 | no amendment |
| 2003 | $1,292,452 | $0 | |

In addition to filing amended returns in April 2007, plaintiffs sought to reduce their 2003 taxable income by applying the $721,344 in NOLs generated since 1988 directly towards their 2003 taxable income. Under plaintiffs' calculations, this resulted in a refund of $224,252 for the taxable year 2003, which they claimed.

The IRS denied the claim for a refund on March 19, 2010, and plaintiffs filed suit in the Court of Federal Claims on May 11, 2010.

### II. *Analysis*

Defendant has moved for summary judgment under RCFC 56(c), and argues that

plaintiffs can only take a deduction for their net operating losses in the manner allowed by Section 172. Plaintiffs, who are appearing *pro se* in this matter, respond that facts are at issue because the application of Section 172 is discriminatory.

### A. *Standard of Review*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1); *see also Consolidation Coal Co. v. United States*, 615 F.3d 1378, 1380 (Fed.Cir.2010). A material fact is one that "might affect the outcome of the suit," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the facts, "all justifiable inferences are to be drawn" in favor of the party opposing summary judgment. *Id.* at 255, 106 S.Ct. 2505. Once the movant has shown that no genuine issue of material fact exists, the party opposing summary judgment must demonstrate that such an issue does, in fact, exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish a genuine issue of material fact, a party "must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed.Cir.1985).

### B. *The Deduction for Net Operating Losses, Section 172*

Taxpayers, under Section 172, can take a deduction for NOLs suffered in a taxable year and apply that deduction to taxable years both before and after the year in which the loss was suffered. The tax code generally defines NOLs as "the excess of the *deductions allowed by this chapter over the* gross income." I.R.C. § 172(c). As with all deductions, the deduction "is a matter of legislative grace and ... the burden of clearly showing the right to that claimed deduction is on the taxpayer." *Interstate Transit Lines v. Comm'r of Internal Revenue*, 319

U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943).

Four features of the NOL deduction are relevant to this case. First, the code describes how the amount of the deduction for a specific year is calculated. This amount is "equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year." I.R.C. § 172(a). A carryover is "[a]n income tax-deduction (esp. for a net operating loss) that cannot be taken entirely in a given period but may be taken in a later period." BLACK'S LAW DICTIONARY 242 (9th Ed.); *see also Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1328 n. 2 (Fed. Cir.2007) (defining carryover). Likewise, a carryback is "[a]n income-tax deduction (esp. for a net operating loss) that cannot be taken entirely in a given period but may be taken in an earlier period." BLACK'S LAW DICTIONARY 242; *see also Electrolux*, 491 F.3d at 1328 n. 1 (defining carryback).

Second, the code specifies the exact years to which NOLs may be carried. The code states that "a net operating loss for any taxable year (i) shall be a net operating loss carryback to each of the 2 taxable years preceding the taxable year of the loss, and (ii) shall be a net operating loss carryover to each of the 20 taxable years following the taxable year of the loss." I.R.C. § 172(b)(1)(A). Importantly, the code uses the mandatory word "shall" to describe the operation of NOL carrybacks and carryovers. Thus, an NOL must be used, first, as a carryback to the prior two years and, second, as a carryover to the subsequent twenty years.

Third, the code states that the "entire amount" of the NOL for a given year must be carried to other taxable years. I.R.C. § 172(b)(2). Under the code, "The entire amount of the net operating loss for any taxable year ... shall be carried to the earliest of the taxable years to which ... such loss may be carried." *Id.* If some portion of the loss is not absorbed by the income in that year, then "the portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the

taxable income for each of the prior taxable years to which such loss may be carried." *Id.* Thus, if a taxpayer has NOLs for one taxable year, the taxpayer must first carry the entire amount of the NOLs back to the earliest taxable year possible, and, after carrying the NOLs back, may then carry the NOLs forward to apply to subsequent taxable years as a carryover.

Fourth and finally, the code provides a taxpayer with the option to waive the carryback period and alter how NOLs are applied. As described above, the normal rule for application of NOLs is to carry them back to the two prior years and then to carry them over to the twenty subsequent years. Under Section 172(b)(3), however, a taxpayer "may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year." I.R.C. § 172(b)(3). This waiver, however, "shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect." *Id.* The waiver is irrevocable, once made. *Id.* Thus, if a taxpayer has NOLs in a given year, the taxpayer could elect to waive the carryback period, if this waiver is made by the tax due date, and only carry those NOLs forward to subsequent years.

### C. *Plaintiffs' Application of Their NOLs Differs from Section 172.*

Although the code specifies the order of taxable years in which NOLs must be applied, plaintiffs seek to apply their NOLs in a different order, and attempt to waive the carryback periods for their NOLs. Furthermore, plaintiffs allege that Section 172 itself is discriminatory.

#### i. *NOLs Must be Applied According to the Carryback and Carryover Rules of the Tax Code.*

Plaintiffs seek to take a deduction from their 2003 taxable income equal to the entire amount of their NOLs from 1998 through 2002. As noted above, under Section 172, NOLs are applied first as carrybacks to the two prior taxable years, and second as carryovers to the twenty subsequent taxable years. I.R.C. § 172(b)(1)(A). In this case, for instance, the NOL suffered in 1988 would first be carried back to 1986 and then to 1987. If some portion of the NOL was not absorbed by those two years, it would have to be carried over to 1989 and then 1990 and then each subsequent year for the twenty-year period, until the NOL was fully absorbed.

Although this method of application is mandatory, plaintiffs seek to collect all of their NOLs from 1988 through 2002 and apply them *en masse* to 2003 without ever having gone through the mandated process of carrybacks and carryovers. The code does not allow NOLs to be applied in this way, and the rules for taking deductions must be strictly followed. *See United States v. Foster Lumber Co., Inc.*, 429 U.S. 32, 34–35, 97 S.Ct. 204, 50 L.Ed.2d 199 (1976) ("The entire loss *must* be carried to the earliest possible year; any of the loss that is not 'absorbed' by that first year may then be carried in turn to succeeding years.") (emphasis added). The method for taking an NOL deduction is "mandated by the Code" and the Court "is not free to ignore" the deduction's requirements. *Messina v. United States*, 202 Ct.Cl. 155, 162 (1973) (emphasis added).

#### ii. *An Election to Waive the Carryback Period Must be Timely.*

Although the code does allow a taxpayer to waive the carryback period and only use NOLs as carryovers, the code requires that this waiver be made at a certain time. Under Section 172(b)(3), a taxpayer "may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year" and must do so "by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect." I.R.C. § 172(b)(3). Plaintiffs seek to retroactively waive the carryback periods for the NOLs they suffered from 1988 to 2002, but under § 172(b)(3) any waiver was required to have been made "by the due date" of each relevant taxable year. Plaintiffs cannot, now, decide to waive the carryback for NOLs stretching as far back as 1988.

### iii. *Plaintiffs' Allegations of Discrimination do not Raise a Triable Issue of Fact.*

■ Finally, plaintiffs argue that Section 172's provisions discriminate against less wealthy taxpayers. Attached to plaintiffs' summary judgment opposition is an affidavit from Arnold C. Charles, a certified public accountant.[1] According to Mr. Charles, the issue in this case is "whether or not [waivers] should even be required, rather than the timeliness of exercising the option." Pls.' Opp'n Ex. 5. Mr. Charles also argues that Section 172 discriminates in favor of a group of taxpayers "perceived to be larger and wealthier entities or individuals" and against a group of "smaller and less wealthy entities and individuals." *Id.* at 6.

Plaintiffs have not raised any specific legal basis for their claims of discrimination. "Summary judgment is appropriate when, drawing all justifiable inferences in the non-movant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Consolidation Coal,* 615 F.3d at 1380. Unsupported allegations of discrimination do not raise triable issues of fact.

### III. *Conclusion*

As the Supreme Court has noted, "Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934). If a taxpayer wishes to take a deduction, the rules for that deduction must be followed. In this case, plaintiffs seek to take a deduction for NOLs in a manner not permitted by Section 172. They cannot do so and are therefore not entitled to a refund.

For the above-mentioned reasons, Defendant's Motion For Summary Judgment is GRANTED. The Clerk is directed to act accordingly.

No costs.

IT IS SO ORDERED.

---

**1.** Defendant has objected to the inclusion of Mr. Charles' affidavit because it appears to violate Federal Rule of Evidence 702. Under RCFC 56(e), an affidavit opposing summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Furthermore, under Federal Rule of Evidence 702, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Courts have found that "[e]xpert testimony that testifies about what the law is or directs the finder of fact how to apply law to facts" does not comply with this requirement. *Stobie Creek v. United States,* 81 Fed.Cl. 358, 360 (2008), *aff'd* 608 F.3d 1366 (Fed.Cir.2010) (citations omitted). In this case, the Court will not strike the affidavit because of the lack of a motion to strike from defendant and because of the Court's ultimate decision for defendant.