**REVISED May 22, 2018**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 17-10719

May 3, 2018

Lyle W. Cayce
Clerk

GEORG F. W. SCHAEFFLER; BERNADETTE SCHAEFFLER,

Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before KING, HAYNES, and HIGGINSON, Circuit Judges.

KING, Circuit Judge:

Georg and Bernadette Schaeffler were previously married and filed a joint income tax return for the year 2002 on October 15, 2003. They later amended their 2002 tax return in April 2013 and claimed a refund for their overpayment. The Internal Revenue Service denied their claim as untimely. The Schaefflers then initiated this action, seeking the refund. The Government filed a motion to dismiss, arguing that the claim was filed after the general limitations period in I.R.C. § 6511(a) and that the special limitations period in I.R.C. § 6511(d)(3)(A) did not apply as the overpayment was not attributable to foreign taxes for which credit was allowed. The district court agreed with

No. 17-10719

the Government that the refund claim was untimely and dismissed the suit. We AFFIRM.

## I.

Georg and Bernadette Schaeffler were previously married and filed a joint income tax return for 2002 on October 15, 2003. Afterwards, they filed multiple amended returns for 2002. As relevant here, they filed a second amended return for 2002 on or around April 10, 2013. This return reflected two changes: a net decrease in foreign tax credit of $1,592,765 and an increase in minimum tax credit of $6,763,525. The net reduction in foreign tax credit resulted from three changes to their German tax liabilities: (1) an increase of $142,902 in German tax liabilities for an entity through which Mr. Schaeffler was conducting foreign rental activity; (2) an increase of $1,166,186 in German personal income tax liabilities; and (3) a decrease of $2,901,853 in German tax liabilities for a foreign partnership with which Mr. Schaeffler was involved.

The increase in minimum tax credit of $6,763,525 was due to changes made in the Schaefflers' third amended tax return for 2001. The original tax return for 2001 showed that they paid only a regular income tax. On or around April 7, 2012, they filed their third amended return for 2001. The revisions made in this return reflected a net increase in foreign tax credit of $5,621,448 and a reduction in minimum tax credit of $3,146,597. These changes resulted in the Schaefflers being subject to an alternative minimum tax in the amount of $2,474,851.[1] The Schaefflers alleged that the changes in the third amended

---

[1] The alternative minimum tax is a tax that is "separate from and in addition to the regular income tax." *Merlo v. Comm'r*, 492 F.3d 618, 620 (5th Cir. 2007) (citing I.R.C. § 55(a)). "Congress enacted the [alternative minimum tax] to ensure that high-income taxpayers cannot avoid significant tax liability through the use of exclusions, deductions, and credits." *Id.* The alternative minimum tax is "imposed at a lower rate than the regular income tax," but applied to an expanded income base that "eliminat[es] tax-breaks given to the taxpayer under the regular income tax regime." *Id.*

2

return for 2001 "did not cause any additional tax liability or payments" for that year. Consequently, as reflected in the second amended return for 2002, the minimum tax credit for 2002 increased by $6,763,525—the sum of $2,474,851 (i.e., the minimum tax credit generated by the alternative minimum tax in 2001) and $4,288,674 (i.e., the minimum tax credit carried forward from years prior to 2001).[2]

The second amended return for 2002 showed that the net decrease in foreign tax credit of $1,592,765 absorbed a portion of the $6,763,525 increase in minimum tax credit, resulting in an overpayment of $5,170,760. The Schaefflers requested a refund for this overpayment. On January 6, 2014, the Internal Revenue Service ("IRS") denied their refund claim as untimely. On December 30, 2015, the Schaefflers initiated this action, seeking their refund for 2002. In its answer, the Government asserted that the court lacked subject matter jurisdiction because the refund claim was untimely. The district court ordered the Government to file a motion to dismiss so that the issue of jurisdiction could be addressed early in the litigation.

The Government complied and filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on September 9, 2016. It argued that (1) the refund claim was subject to and filed after the limitations period in I.R.C. § 6511(a) and therefore untimely and (2) the overpayment was not attributable to the allowance of a foreign tax credit and so the special ten-year limitations period in § 6511(d)(3)(A) did not apply. The Schaefflers then filed an amended complaint with no major changes. On April 25, 2017, the district court dismissed the Schaefflers' refund

---

[2] A taxpayer who pays alternative minimum tax can use some or all of that amount to reduce regular income tax in future years; this is referred to as the "minimum tax credit." *See* I.R.C. § 53(b). The minimum tax credit may be carried forward to future tax years. *See id.* § 53(b)(2).

No. 17-10719

claim, agreeing with the Government that the claim was untimely. The Schaefflers appealed.

## II.

We review de novo a district court's dismissal under Rule 12(b)(1). *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "The district court [] has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981). "In the instant case, the district court dismissed based upon the complaint and the undisputed facts evidenced in the record . . . ." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). "[O]ur review is limited to determining whether the district court's application of the law is correct and, if the decision is based on undisputed facts, whether those facts are indeed undisputed." *Williamson*, 645 F.2d at 413.

This case involves statutory interpretation of the Internal Revenue Code, which is a matter of law that we review de novo. *See Howard Hughes Co., L.L.C. v. Comm'r*, 805 F.3d 175, 180 (5th Cir. 2015). We begin "by examining the plain language of the relevant statute." *Stanford v. Comm'r*, 152 F.3d 450, 455–56 (5th Cir. 1998) (citing *G.M. Trading Corp. v. Comm'r*, 121 F.3d 977, 981 (5th Cir. 1997)). "In the absence of any ambiguity, our examination is confined to the words of the statute, which are assumed to carry their ordinary meaning." *Id.* at 456 (citing *G.M. Trading*, 121 F.3d at 981). "We are authorized to deviate from the literal language of a statute only if the plain language would lead to absurd results, or if such an interpretation would defeat the intent of Congress." *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 451 (5th Cir. 2008) (first citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004);

No. 17-10719

then citing *Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th Cir. 1997)). "Only after application of the principles of statutory construction, including the canons of construction, and after a conclusion that the statute is ambiguous may the court turn to the legislative history." *Id.* (quoting *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 518–19 (5th Cir. 2004)).

## III.

There are two issues in this case: (1) whether the Schaefflers' refund claim for 2002 is timely under I.R.C. § 6511(d)(3)(A) because it relates to "an overpayment attributable to any taxes paid or accrued to any foreign country . . . for which credit is allowed against [income] tax," and (2) whether the Schaefflers' refund claim for 2002 is timely under I.R.C. § 6511(a) because it was filed within two years from the time any tax for 2002 was paid. We first provide a legal background on time limitations for tax refund claims and then proceed to address the issues.

## A.

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The United States has consented to be sued for "erroneously or illegally assessed or collected" taxes. 28 U.S.C. § 1346(a)(1). But the plaintiff must comply with the jurisdictional requirements in I.R.C. § 7422. *See, e.g.*, *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 4–5 (2008). Such requirements for tax refund claims are set forth in § 7422(a). *See id.* Section 7422(a) states that no suit for improperly assessed or collected taxes shall be maintained "until a claim for refund . . . has been duly filed with the Secretary." Section 6511 sets time limitations for the proper filing of a refund claim. *See Duffie v. United States*, 600 F.3d 362, 384 (5th Cir. 2010) ("To overcome sovereign immunity in a tax refund action, a taxpayer must file a refund claim with the IRS within the time limits established by the Internal Revenue Code."). A taxpayer's

No. 17-10719

failure to comply with time limitations deprives the court of subject matter jurisdiction. *See id.*

Generally, a tax refund claim "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." I.R.C. § 6511(a). Section 6511(b) defines two "look-back" periods, incorporating § 6511(a) by reference. *Comm'r v. Lundy*, 516 U.S. 235, 240 (1996). If the refund claim is filed within three years from the time the return was filed, then the refund "shall not exceed the portion of the tax paid within the [three-year] period, immediately preceding the filing of the [refund] claim, equal to 3 years plus the period of any extension of time for filing the return" ("three-year look-back period"). I.R.C. § 6511(b)(2)(A). If the refund claim is not filed within that three-year period, the refund "shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim" ("two-year look-back period"). *Id.* § 6511(b)(2)(B).

Section 6511(d)(3) provides an exception to the general rule in § 6511(a). If the tax refund claim "relates to an overpayment attributable to any taxes paid or accrued to any foreign country . . . for which credit is allowed against [income] tax," then a special ten-year limitations period applies. *Id.* § 6511(d)(3)(A). The amount of the refund may also exceed the refund amount limits in § 6511(b) by "the amount of the overpayment attributable to the allowance of a credit for the taxes" accrued to the foreign country. *Id.* § 6511(d)(3)(B).

It is clear that the Schaefflers' refund claim was not filed within the three-year look-back period. The Schaefflers undisputedly filed their original return for 2002 in October 2003 and their refund claim in April 2013. They argue that their refund claim is timely because (1) the § 6511(d)(3) exception

6

No. 17-10719

applies or (2) the second clause in § 6511(a) applies (i.e., the refund claim was filed within "2 years from the time the tax was paid").

## B.

The first issue is whether the Schaefflers' 2002 overpayment was attributable to foreign taxes for which credit was allowed. We conclude that it was not and therefore § 6511(d)(3)(A) does not apply to render their refund claim timely.

The parties focus their argument on the phrase "attributable to" in § 6511(d)(3)(A). Though this phrase appears in many provisions of the Internal Revenue Code, it is "not defined anywhere in the Code and has no special technical meaning under the tax laws." *Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327, 1330 (Fed. Cir. 2007) (citing *Stanford*, 152 F.3d at 458). "A fundamental canon of statutory construction instructs that in the absence of a statutory definition, we give terms their ordinary meaning." *Kornman*, 527 F.3d at 451 (quoting *Wallace v. Rogers (In re Rogers)*, 513 F.3d 212, 224 (5th Cir. 2008)). In *Stanford*, we concluded that the plain meaning of "attributable to" is "due to, caused by, or generated by" in the context of I.R.C. § 925(c)(1)(C)(i). 152 F.3d at 459. Other courts interpreting different provisions of the tax code have come to the same conclusion. *See, e.g.*, *Electrolux Holdings*, 491 F.3d at 1331 (interpreting "attributable to" in § 6511(d)(2)(A) as "due to, caused by, or generated by"); *Lawinger v. Comm'r*, 103 T.C. 428, 435 (1994) (interpreting "attributable to" in § 108(g)(2)(B) as "due to, caused by, or generated by"); *see also Braunstein v. Comm'r*, 374 U.S. 65, 70 (1963) (interpreting "attributable to" in the phrase "gain attributable to such property" in § 117(m) of the 1939 tax code as "merely confin[ing] consideration to that gain caused or generated by the property in question").

The parties agree that the plain meaning of "attributable to" is "due to, caused by, or generated by." They also agree that "attributable to" sets forth a

causation requirement. The parties dispute whether this requirement is satisfied here. Because, in the United States, individuals are "taxed on [their] income [from] all sources, whether domestic or foreign," they are permitted to take a foreign tax credit against their U.S. taxes "by the amount of the tax paid to [a] foreign country" in order to prevent double taxation. *Tex. Instruments Inc. v. United States*, 551 F.2d 599, 605 (5th Cir. 1977); *see* I.R.C. § 901(a). In their original return for 2002, the Schaefflers elected to claim their foreign tax credit in the year when their foreign taxes accrued, rather than the year when they paid such taxes. As such, the Schaefflers were subsequently obligated by § 905(c)(1)(A) to notify the Government if "accrued [foreign] taxes when paid differ from the amounts claimed as credits by the taxpayer." Practically, this reporting requirement can be fulfilled by filing an amended tax return and providing other information specified in 26 C.F.R. § 1.905-4T(b). *See* IRS Chief Counsel Advisory 201145015, 2011 WL 5439123 (Nov. 10, 2011).

The Schaefflers' position is that the changes in their German tax liabilities for 2002 triggered the notification requirement in § 905(c)(1)(A), under which they had to file the second amended return for 2002 and redetermine their U.S. taxes. The redetermination of U.S. taxes involved incorporating a revised figure for their 2002 minimum tax credit, which then resulted in an overpayment. Thus, according to the Schaefflers, the changes in their German tax liabilities for 2002 caused the 2002 overpayment, and the ten-year statute of limitations in § 6511(d)(3)(A) applies. The Government's position is that the changes in German tax liabilities for 2002 resulted in a net decrease in their foreign tax credit and that such a *decrease* could not have caused the 2002 *over*payment.

We agree with the Government. The Schaefflers' overpayment for 2002 must be "attributable to any taxes paid or accrued to any foreign country . . . for which credit is *allowed* against [income] tax." I.R.C. § 6511(d)(3)(A)

(emphasis added). The changes in foreign tax liabilities for 2002 generated a net reduction in (not an increase in or an allowance of) foreign tax credit for 2002. This *reduction* could not have caused the *over*payment. The increase in the 2002 minimum tax credit caused the overpayment. While the changes in German tax liabilities for 2002 triggered the § 905(c)(1)(A) requirement to submit an amended tax return that reported the increase in the 2002 minimum tax credit, § 905(c)(1)(A) is merely a notification provision and did not generate the increase in the 2002 minimum tax credit.[3]

The district court relied on *Electrolux Holdings* as support for its holding. In *Electrolux Holdings*, the Federal Circuit held that the corporate taxpayer's refund claim for 1995 was untimely. 491 F.3d at 1333. Pursuant to I.R.C. § 1212(a)(1), the taxpayer was permitted to carry back the unused portion of its 1994 long-term capital loss to each of the three years before 1994 and then carry over any remaining loss to each of the five years after 1994, treating the loss as a short-term capital loss each year. *Id.* at 1328–29. The taxpayer did so in the years in which the loss could be offset by capital gains, carrying back to 1993 and then carrying over to 1995, 1996, 1997, and 1998. *Id.* at 1329. The taxpayer filed the refund claim for 1995 in 1999, past the three-year general limitations period in § 6511(a). *Id.* The issue on appeal was whether the 1995 overpayment was "attributable to . . . a carryback" of a long-term capital loss from 1994; if so, then the special limitations period in § 6511(d)(2)(A) would

---

[3] The changes in German tax liabilities for 2002 did not trigger a tax liability change that then caused the change in the minimum tax credit for 2002. The 2001 change in foreign tax liability, which translated into the net increase in foreign tax credit, arguably did. It generated a change in 2001 U.S. tax liabilities that arguably then caused the change in the 2002 minimum tax credit. *Cf. Electrolux Holdings*, 491 F.3d at 1331–32 (rejecting the plaintiffs' "tracing" argument based on *First Chi. Corp. v. Comm'r*, 742 F.2d 1102 (7th Cir. 1984) (per curiam)). The Schaefflers did not make this "tracing" argument to the district court or on appeal and, thus, have forfeited it. *See CenturyTel of Chatham, LLC v. Sprint Commc'ns Co., L.P.*, 861 F.3d 566, 573 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 669 (2018). Consequently, we need not address it.

apply and render the refund claim timely. *Id.* at 1330. The court determined that the plain meaning of "attributable to" is "due to, caused by, or generated by." *Id.* at 1331. It concluded that the "direct cause" of the 1995 overpayment was the 1994 long-term capital loss "carryover," not "carryback." *Id.* Thus, the special limitations period did not apply, and the refund claim was untimely. *Id.*

The Schaefflers argue that *United States v. Woods*, 571 U.S. 31 (2013), supersedes the reasoning in *Electrolux Holdings* and, under *Woods*, the 2002 changes in German tax liabilities and subsequent U.S. tax redetermination were "inextricably intertwined" causes of the 2002 overpayment. These contentions are unavailing. *Woods* concerns whether the valuation-misstatement penalty in the tax code applies in a situation involving partnerships that were tax shelters designed "to generate large paper losses" for their partners so that the partners could "reduce [their] taxable income." *See* 571 U.S. at 33. "A partnership does not pay federal income taxes; instead, its taxable income and losses pass through to the partners." *Id.* at 38 (citing I.R.C. § 701). Pursuant to I.R.C. § 6662(a) and (b)(3), the portion of a taxpayer's underpayment that is "attributable to . . . [a]ny substantial valuation misstatement" under § 6662(e)(1)(A) is subject to a penalty. *Id.* at 43.

The IRS had determined that the partnerships involved were shams for tax purposes because they lacked economic substance. *Id.* at 36–37. Thus, "no partner could legitimately claim" a tax basis in a partnership interest (i.e., an outside basis) that is "greater than zero." *Id.* at 44. If a partner did so in order to generate losses on his tax return and then deducted those losses in order to underpay his taxes, then the underpayment would be "attributable to" a substantial valuation misstatement. *Id.* The taxpayer-partner attempted to argue that his underpayment was "attributable to" the IRS determination that the partnerships were shams, not his misstatement. *Id.* at 46–47. The Supreme

No. 17-10719

Court rejected his argument, stating that "the partners underpaid their taxes because they overstated their outside basis [(i.e., the misstatement)], and they overstated their outside basis because the partnerships were shams." *Id.* at 47. In other words, the misstatement and the partnerships' lack of economic substance were "inextricably intertwined." *Id.*

*Woods* did not supersede the reasoning in *Electrolux Holdings* and is inapposite to this case. Nothing in the Supreme Court's analysis suggests that *Electrolux Holdings* is no longer good law. Here, the 2002 changes in German tax liabilities and subsequent U.S. tax redetermination were not "inextricably intertwined" causes of the 2002 overpayment. It is true that the 2002 changes in German tax liabilities triggered the § 905(c)(1)(A) reporting requirement, but the U.S. tax redetermination under § 905(c)(1)(A) did not cause the 2002 overpayment. As stated above, the overpayment resulted from the increase in the 2002 minimum tax credit. The U.S. tax redetermination involved the reporting of this increase, but it did not generate this increase. Therefore, the changes in German tax liabilities for 2002 did not cause the 2002 overpayment.

Next, the Schaefflers contend that "but for" the U.S. tax redetermination mandated by § 905(c)(1)(A), the minimum tax credit carryforward would have instead been carried forward indefinitely to a future year. This contention is unavailing. The minimum tax credit is defined as the excess of "the adjusted net minimum tax imposed for all prior taxable years beginning after 1986" over "the amount allowable as a credit" for all of these prior years. I.R.C. § 53(b). The minimum tax credit carryforward would have been "allowable," and therefore absorbed, as a minimum tax credit in 2002 regardless of whether the Schaefflers submitted the second amended return for 2002. Thus, per I.R.C. § 53(b), the 2002 absorbed amount would automatically be taken into consideration for all years after 2002.

11

The Schaefflers also argue that the district court's construction would "disallow[] the use of the computational carryforward credit" and affect only taxpayers whose returns are "computed without being affected by minimum tax credits." This contention is also unmeritorious. There are a variety of scenarios to which § 6511(d)(3)(A) apply. All of these scenarios involve a change in foreign tax liability that results in an *increase* in foreign tax credit that, perhaps combined with other credits, generates an overpayment. The difference between these scenarios and the case at hand is that here there was a net *decrease* in foreign tax credit. And so, even assuming that the minimum tax credit for 2002 did not change and affect the amended tax return for 2002, § 6511(d)(3)(A) would not apply.

In sum, based on a plain reading of § 6511(d)(3)(A), we conclude that a *reduction* in 2002 foreign tax liabilities did not cause the *over*payment in 2002. Accordingly, the Schaefflers' refund claim is not timely under § 6511(d)(3)(A).

## C.

The second issue is whether the Schaefflers' refund claim for 2002 is timely under I.R.C. § 6511(a) because it was filed within two years from the time any tax for 2002 was paid. The parties dispute whether there was a qualifying payment two years prior to the refund claim.

As the tax code does not define the term "paid" in § 6511(a), it should be afforded its "ordinary meaning." *See Kornman*, 527 F.3d at 451. Dictionaries define the term "pay" as "to discharge indebtedness for" or "to make a disposal or transfer of (money)." *Pay*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003); *see pay*, American Heritage Dictionary (4th ed. 2000) ("to discharge or settle" or "to give or bestow"); *pay*, Black's Law Dictionary (10th ed. 2014) ("[t]o transfer money that one owes to a person, company, etc."); *see also payment*, Black's Law Dictionary (10th ed. 2014) ("[t]he money or other valuable thing so delivered in satisfaction of an obligation"). Thus, the plain

meaning of "tax was paid" in § 6511(a) is that money was transferred to satisfy a tax liability. Based on a plain reading of § 6511(a), the Schaefflers did not pay any tax for 2002 within two years of filing their refund claim for 2002. They did not transfer money to the Government to satisfy a 2002 tax liability.

The Schaefflers first argue that the processing of the 2001 increase in foreign tax credit and the 2001 reduction in minimum tax credit in the third amended return for 2001 constitutes a payment for purposes of § 6511(a). This contention fails for three reasons. First, the plain language of § 6511(a) indicates that the payment must be of taxes for the year for which the "refund of an overpayment" is sought (here, 2002). *See* I.R.C. § 6511(a) ("Claim for . . . refund of an overpayment of *any* tax imposed by this title . . . shall be filed by the taxpayer within . . . 2 years from the time *the* tax was paid . . . ." (emphasis added)).[4] Second, the 2001 increase in foreign tax credit was applied to the 2001 decrease in minimum tax credit. This was an adjustment for a single tax year. We have held that "the offsetting of adjustments for a single tax year . . . by the IRS . . . does not constitute payment of tax for the purpose of IRC § 6511(a)." *Republic Petroleum Corp. v. United States*, 613 F.2d 518, 525 (5th Cir. 1980). Third, the Schaefflers state in their complaint that the changes that prompted the filing of the third amended return for 2001 "did not cause any additional tax liability or *payments*" (emphasis added).

Next, the Schaefflers argue that the carryforward of the "credit" from the third amended return for 2001, which offset the 2002 reduction in foreign tax credit, constitutes a payment for purposes of § 6511(a). According to them, this

---

[4] The Schaefflers' argument may be construed to mean that the offsetting of the increase in alternative minimum tax by the income tax decrease due to the increase in foreign tax credit in 2001 (i.e., the offsetting of different types of tax in the same year) constitutes a payment. Even assuming arguendo this is correct, their contention still fails in the limitations context because the offsetting occurred in 2001, which is not the year for which the refund was claimed.

"credit" is from the alternative minimum tax in 2001 and prior years. Their contention is unavailing. The Schaefflers point to *Dresser Industries, Inc. v. United States*, 73 F. Supp. 2d 682 (N.D. Tex. 1999), *aff'd*, 238 F.3d 603 (5th Cir. 2001), as support for their argument.

In *Dresser*, the corporate taxpayer filed refund claims for the years 1980, 1981, 1982, 1984, 1986, and 1987. 238 F.3d at 605. The parties disputed multiple procedural and substantive issues, which the district court addressed. *See* 73 F. Supp. 2d at 685–97. The district court held that the taxpayer's 1981 refund claim, which was based on the application of a foreign tax credit carryback from 1983, was procedurally barred by § 6512(a), even though it was timely under § 6511(a). *Id.* at 687. In its § 6511(a) discussion, the district court had concluded that the application of the 1983 foreign tax credit was a payment under § 6511(a), reasoning that "the application of a [foreign tax] credit is treated in the same manner and has the same effect as a cash payment." *Id.* On appeal, the taxpayer challenged only the district court's holdings regarding the substantive issues. *See* 238 F.3d at 606. We affirmed the judgment of the district court on these issues but did not address any of the procedural issues, including the district court's statements discussing § 6511(a). *See id.* at 605 n.4, 616.

We now address whether the application of a foreign tax credit is a payment under § 6511(a) and reject the *Dresser* district court's conclusion that it is. The district court in *Dresser* incorrectly interpreted *Kingston Products Corp. v. United States*, 368 F.2d 281 (Cl. Ct. 1966), and *Republic Petroleum*— the two cases upon which it relied. In *Kingston Products*, the Court of Claims held that the application of a corporate taxpayer's potential refund for 1953 excess profits against its potential income tax deficiency for 1953 did not

14

constitute a "payment" under the predecessor statutory provisions to I.R.C. §§ 7422(d) and 6402(a).[5] *See* 368 F.2d at 286. The court stated:

> The principle of credit allowances, therefore, "applies after the offsetting amounts are ascertained and not to their ascertainment." The principle thus applies only as between different kinds of tax for a single tax year or against taxes of different years, so that a tax is deemed to be paid if a cash credit of the taxpayer is charged against a determined assessment or if an overpayment of one year is credited against a deficiency of another year. In sum, the principle has no application to the present situation which involves not the offsetting of an overassessment against an existing deficiency, but the offsetting of an upward adjustment against a downward adjustment to a single tax liability (income and excess profits) for a single tax year (1953). Such an offsetting of adjustments does not, it would seem clear, constitute a "credit" or "payment" within the meaning of [the statutory provisions at issue].

*Id.* at 287 (citations omitted). Subsequently, we followed the reasoning of *Kingston Products* and held in *Republic Petroleum* that the offsetting of adjustments for a single tax year by the IRS does not constitute a payment for purposes of § 6511(a). *See* 613 F.2d at 525.

Under *Kingston Products* and *Republic Petroleum*, the "credit" that constitutes a payment under § 6511(a) is the credit of an overpayment under §§ 7422(d) and 6402(a). Section 7422(d) states that "[t]he credit of an overpayment of any tax in satisfaction of any tax liability shall . . . be deemed to be a payment in respect of such tax liability at the time such credit is allowed." Section 6402(a) provides that, "[i]n the case of any overpayment, the Secretary . . . may credit the amount of such overpayment." The credit of an

---

[5] Section 6402(a) of the current tax code is derived from § 3770(a)(4) of the 1939 tax code, and § 7422(d) of the current tax code is derived from § 3772(e) of the 1939 tax code. *See* U.S. Cong. Joint Comm. on Taxation, Derivations of Code Sections of the Internal Revenue Codes of 1939 and 1954, at 90, 94 (1992); *see also Kingston Prods.*, 368 F.2d at 286 (discussing §§ 3770(a)(4) and 3772(e) of the 1939 tax code).

overpayment, referred to in §§ 7422(d) and 6402(a), is different from the application of a tax credit that reduces tax liability.[6] It is the credit of an overpayment, not the application of a tax credit, that constitutes a payment under § 6511(a). *See* 15 *Mertens Law of Federal Income Taxation* § 58:50 (2018) ("A payment is deemed to be made when a tax liability is satisfied by the credit of an overpayment of another tax." (citing I.R.C. § 7422(d))). Accordingly, the district court in *Dresser* misinterpreted *Kingston Products* and *Republic Petroleum*, as the case involved the application of the foreign tax credit, not the credit of an overpayment.

Here, the Schaefflers did not allege that there was an overpayment for 2001 that was credited to them by the Secretary for 2002 taxes. The carryforward of "credit" from 2001 is not the same as the credit of an overpayment under §§ 7422(d) and 6402(a). Thus, their second argument fails.

In sum, as the Schaefflers' refund claim for 2002 was not filed within two years of the time any tax for 2002 was paid, it is not timely under § 6511(a).

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[6] A tax credit can reduce tax liability, but is generally not "refundable" under § 6401(b)(1). Section 6401(b)(1) cabins "refundable credits" to those that are listed in "subpart C of part IV of subchapter A of chapter 1" (i.e., I.R.C. §§ 31–37). Section 6401(b)(1) states that "[i]f the amount allowable as" refundable credits "exceeds the tax imposed . . . , the amount of such excess shall be considered an overpayment." These refundable credits do not include the foreign tax credit or the minimum tax credit. *See* I.R.C. §§ 31–37. Thus, neither the foreign tax credit nor the minimum tax credit can generate an overpayment under §§ 7422(d) and 6402(a) that would constitute a payment under § 6511(a).